UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JENNAYA BENNETT-WERRA, )<br>     *Plaintiff,* )<br>)<br>v. )<br>)<br>STEVEN TOMPKINS, et al., )<br>     *Defendants.* ) | Civil Action No. 1:20-cv-10017-ADB |

## MEMORANDUM OF LAW IN SUPPORT OF THE
## MOTION TO DISMISS BY DEFENDANT NAPHCARE, INC.

Defendant NaphCare, Inc., by counsel, submits this Memorandum of Law in support of its accompanying Motion to Dismiss the Amended Complaint (***Doc. 15***) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief may be granted.

Plaintiff's sole contention against NaphCare, Inc. ("***NaphCare***") is that she was denied electrolysis for treatment of her gender dysphoria. As set forth below: (1) Plaintiff fails to state a claim under the Americans with Disabilities Act because NaphCare, a privately owned and operated corporation, is not a "public entity" subject suit under Title II of the Act; (2) Plaintiff fails to state a claim under the Rehabilitation Act of 1973 because she does not allege that NaphCare receives federal financial assistance, which is a prerequisite for suit under the Act; (3) Plaintiff fails to state a claim under the Prison Rape Elimination Act because the Act does not create a private right of action; (4) Plaintiff fails to state a Section 1983 Fourteenth Amendment claim for deliberate indifference to serious medical needs because she does not allege that she has been diagnosed with a significant medical need for electrolysis and prescribed this treatment by a medical professional and that a NaphCare employee acted with deliberate indifference to a serious medical need; (5) Plaintiff fails to state a Section 1983 claim for denial of equal protection because she does not allege that she was denied electrolysis that was prescribed and provided to other

inmates with gender dysphoria; (6) Plaintiff fails to state a Section 1983 claim for denial of due process because she does not allege that she was deprived of a cognizable liberty or property interest in the absence of requisite process; (7) Plaintiff fails to state a Section 1983 claim for denial of state constitutional rights because state law claims cannot be brought pursuant to § 1983; and (8) Plaintiff fails to state a claim against NaphCare because she does not allege that its employees acted pursuant to an official policy or custom.

## INTRODUCTION

This is a *pro se* action by Jennaya Bennett-Werra ("***Plaintiff***"), a Bristol County pretrial detainee who has been confined at the Suffolk County House of Correction since April 10, 2019. The defendants are Steven Tompkins, the Sheriff of Suffolk County ("***Sheriff***"); Yolanda Smith, the Superintendent and PREA Coordinator at the Suffolk County House of Correction ("***HOC***"); Zezinha Mitchell, the Assistant Deputy Superintendent of the HOC; Jennifer Sullivan, the Grievance Coordinator at the HOC; Christina Ruccio, the Director of Women's Programming at the HOC (collectively, the "***County Defendants***"); and NaphCare, a private company that provides health services to inmates confined at the HOC pursuant to a contract with the Sheriff.

Plaintiff brings this action pursuant to the Americans with Disabilities Act ("***ADA***"), 42 U.S.C. 12101, *et seq.*; the Rehabilitation Act of 1973 ("***Rehabilitation Act***"), 29 U.S.C. § 701, *et seq.*; 42 U.S.C. § 1983; the Prison Rape Elimination Act of 2000 ("***PREA***"), 42 U.S.C. § 15601, *et seq.*; and the Due Process and Equal Protection clauses of the Fourteenth Amendment to the United States Constitution. She also invokes Articles 1, 7, 106 and 114 of the Massachusetts Declaration of Rights. ***Doc. 15, Am. Compl., ¶¶ 45-53***. Plaintiff describes herself as a Transgender Female who began her transition and living as a female approximately 3 years ago. ***Doc. 15, Am. Compl., ¶ 13***

Plaintiff's sole allegation against Defendant NaphCare is that a NaphCare employee denied her request for electrolysis as "not medically indicated." **Doc. 15, Am. Compl. ¶ 20**. Plaintiff asserts that she submitted two "sick slips" and a grievance, and that

> "electrolysis is a necessary medical procedure for transgender women because without it the patient cannot move forward with their gender transition and their gender reassignment surgery. Also having to live as women with male body hair and facial hair triggers dysphoric thoughts and depression. Electrolysis is part of the standards of medical care set for by WPATH (World Professional Association for Transgender Health)."

Id. All other allegations pertain exclusively to the County Defendants.[1]

## ARGUMENT

### I.  RULE 12(b)(6) STANDARD.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), *citing* Bell Atl. Corp v. Twombly, 550 U.S. 544, 570 (2007). *"*While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal citations and quotations omitted). "A suit will be dismissed if the complaint does not set forth 'factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." United States

---

[1] Although the Amended Complaint references all defendants in the collective as "Defendants," it is apparent that Plaintiff is asserting discrete claims against NaphCare and against the County Defendants. Plaintiff alleges that the County Defendants, who are separately represented, refuse to: house her on a female unit; reprimand staff who fail to accommodate, treat and communicate with individuals with gender dysphoria; reprimand staff who fail to use female pronouns when addressing or referring to Plaintiff; and treat Plaintiff the same as all other women confined at the HOC.

Ex Rel Hutchinson v. Blackstone Med., Inc., 647 F.3d 377, 384 (1st Cir. 2011), *quoting* Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008).

## II. THE COMPLAINT FAILS TO STATE CLAIMS AGAINST NAPHCARE, INC. UNDER THE AMERICANS WITH DISABILITIES ACT AND THE REHABILITATION ACT OF 1973.

### A. Plaintiff's claim against NaphCare, Inc. under the Americans with Disabilities Act must be dismissed because NaphCare, Inc. is not a covered public entity.

Plaintiff contends that Defendant NaphCare discriminated against her in contravention of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*, by refusing to provide her with electrolysis for her gender dysphoria. Plaintiff also alleges that NaphCare discriminated against her because of her disability in contravention of the Rehabilitation Act of 1973. Section 12101 of the ADA sets forth Congressional findings and the purpose of the Act, not the Act's substantive provisions. Plaintiff's ADA claim should be construed as arising under Title II of the Act, 42 U.S.C. § 12132.

Title II states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (2012). To state a Title II violation, a plaintiff much show: "(1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities…; and (3) that such exclusion, denial of benefits or discrimination was by reason of his disability." Toledo v. Sanchez, 454 F.3d 24, 31 (1st Cir. 2006), *citing* Parker v. Universidad de Puerto Rico, 225 F.3d 1,4 (1st Cir. 2000).

The ADA defines the term "public entity" as a "department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1)(B). State prisons and state prison services are public entities for purposes of the ADA. *See*

4

Pennsylvania Dept. of Corr. v. Yeskey, 524 U.S. 206, 2019-10 (1998). However, Plaintiff does not allege and cannot establish that NaphCare, a privately owned and operated corporation,[2] is a "public entity" under Title II. *See* Wallace v. Pierce County Sheriff's Dept., 2019 WL 2141640 *4 (W.D. Wash. 2019) (holding that Naphcare is not subject to Title II under the ADA and is not a proper defendant for prisoner's allegations related to an ADA shower and cell). Although the First Circuit has not yet addressed whether a private contractor might be an "instrumentality" of the State and therefore, a "public entity," the vast majority of courts, including all Circuit courts that have addressed the issue, have held that a private contractor is not a "public entity" under the ADA. *See, e.g.*, Edison v. Douberly, 604 F.3d 1307, 1310 (11th Cir. 2010) (holding that the ADA does not apply to private prisons); Green v. City of New York, 465 F.3d 65, 78-80 (2d Cir. 2006) (holding that a private hospital that contracts with the City is not a public entity); Kitchen v. Liberty, 2019 WL 2527088 *6 (D.Me. June 19, 2019) (private company that provides medical services at a county correctional facility is not a "public entity" under Title II); Sherkat v. New Eng. Vill., Inc., 2015 WL 8215983 *8 (D.Mass Dec. 8, 2015) (listing Circuit Courts of Appeal holding that private contractors are not "public entities").

NaphCare provides services pursuant to its contract with the Sheriff. Contracting with the government to provide services does not, by itself, make a private company subject to Title II. *See* Green, 465 F.3d at 79. Even if NaphCare performed those services according to the Sheriff's rules and under its direction, it still would not be "a creature of any governmental entity," but a "parallel private entity." *See* Id. Title II clearly provides for liability only against public entities or

---

[2] NaphCare, Inc. is family-owned and operated. *See* https://www.naphcare.com/about-naphcare/. It is registered as a Foreign Corporation with the Secretary of the Commonwealth of Massachusetts – Corporations Division. *See* Identification Number 581823464.

instrumentalities of a state. Because NaphCare qualifies as neither, it is entitled to dismissal of Plaintiff's ADA claim.

> **B. Plaintiff's claim against NaphCare, Inc. under the Rehabilitation Act of 1973 must be dismissed because Plaintiff does not allege and cannot show that NaphCare, Inc. receives federal financial assistance in connection with the provision of health services to Suffolk County inmates.**

The Rehabilitation Act ensures that no "otherwise qualified individual with a disability … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance …." 29 U.S.C. § 794 (2014). To state a Rehabilitation Act claim, Plaintiff must show that: (1) she is a "handicapped person" under the Act; (2) she is "otherwise qualified" to enjoy the services or benefits offered; (3) she is being excluded from participation or enjoyment solely by reason of her disability; and (4) the denying entity receives federal financial assistance. Receipt of federal financial assistance is an essential element of the cause of action under the Rehabilitation Act. McDonald v. Commonwealth, 901 F.Supp. 471, 477 (D.Mass. 1995). A complaint that fails to make any allegation with respect to federal financial assistance is fatally deficient. Id. at 478. Plaintiff makes no allegation that NaphCare receives federal financial assistance, and she can offer no evidence to show that this is the case. NaphCare contracts with the Sheriff, rather than the federal government, to provide health services to the Suffolk County inmate population.[3] Therefore, the Rehabilitation Act claim must be dismissed.

---

[3] Even if it were established that NaphCare receives federal funding indirectly through the Sheriff, that funding would not constitute federal financial assistance, as the funds received by NaphCare are purely compensatory payments for the services it provides to inmates. Additionally, the fact that a physician works at a facility that accepts federal assistance does not render him liable under the Rehabilitation Act because the physician is not in the position to accept or reject federal funding. Glanz v. Vernick, 756 F.Supp. 632, 637 (D.Mass. 1991).

**III.   THE COMPLAINT FAILS TO STATE A CLAIM AGAINST NAPHCARE, INC. UNDER THE PRISON RAPE ELIMINATION ACT BECAUSE THE ACT DOES NOT CREATE A PRIVATE RIGHT OF ACTION.**

To the extent that Plaintiff invokes PREA as a basis for her claim against NaphCare, her claim must be dismissed because PREA does not create a private right of action. *See* Saunders v. Strafford Cty. Dep't of Corr., 2015 WL 4634949, at *1 (D.N.H. June 26, 2015); Morissette v. Supt. of MCI Cedar Junction, 2014 WL 3896722, at *3 (D.Mass. Aug. 7, 2014).

**IV.   THE COMPLAINT FAILS TO STATE A CLAIM AGAINST NAPHCARE, INC. UNDER 42 U.S.C. § 1983 FOR DENIAL OF FEDERAL AND STATE CONSTITUTIONAL RIGHTS.**

Plaintiff pleads "42 U.S.C. § 1983 Violation of Civil Rights" as a discrete claim. However, Section 1983 "is not itself a source of substantive rights," but it provides "a method for vindicating federal rights elsewhere conferred." Graham v. Connor, 490 U.S. 386, 393–94 (1989), *quoting* Baker v. McCollan, 443 U.S. 137, 144, n. 3 (1979). The Amended Complaint is appropriately construed as asserting federal and state constitutional claims pursuant to Section 1983.

**A.  Plaintiff's civil rights claim against NaphCare, Inc. must be dismissed for failure to state a claim for deliberate indifference to a serious medical need.**

Plaintiff's complaint for denial of electrolysis is appropriately analyzed under the framework applicable to prisoners' Eighth Amendment claims of inadequate medical care. While medical care claims of pretrial detainees like Plaintiff are grounded in the principle of substantive due process, they are analyzed under the Eighth Amendment standard applicable to convicted prisoners. *See* Ramos v. Patnaude, 640 F.3d 485, 489 (1st Cir. 2011) (Souter, J.); Ruiz-Rosa v. Rullman, 485 F.3d 150, 155 (1st Cir. 2007) ("Generally, the standard applied under the Fourteenth Amendment is the same as the Eighth Amendment standard"); Burrell v. Hampshire County, 307 F.3d 1, 7 (1st Cir.2002). To state and prove a claim under 42 U.S.C. § 1983 for inadequate medical care, an inmate must satisfy two elements: "(1) an objective prong that requires proof of a serious

7

medical need, and (2) a subjective prong that mandates a showing of prison administrators' deliberate indifference to that need." Kosilek v Spencer, 774 F.3d 63, 82 (1st Cir. 2014); *see* Estelle v. Gamble, 429 U.S. 97, 106 (1976). When analyzing an Eighth Amendment claim, "the subjective deliberate indifference inquiry may overlap with the objective serious medical need determination," and "similar evidence . . . may be relevant to both" Kosilek, 774 F.3d at 83 n.7, *quoting* Leavitt v. Corr. Med. Servs., Inc., 645 F.3d 484, 498 (1st Cir. 2011).

> *1. Plaintiff's claim against NaphCare, Inc. must be dismissed for failure to plead sufficient facts to show that NaphCare, Inc. provided insufficient treatment for a serious medical need.*

To satisfy the objective prong of the inquiry, an inmate: (a) must have a serious medical need; and, (b) must show that the medical care provided by the prison "is not 'adequate,' as measured against 'prudent professional standards.'" Nunes v. Massachusetts Dep't of Correction, 766 F.3d 136, 142 (1st Cir. 2014), *quoting* United States v. DeCologero, 821 F.2d 39, 43 (1st Cir. 1987). A serious medical need is "one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Kosilek, 774 F.3d at 82 (citation omitted). This prong does not impose upon prison administrators a duty to provide care that is ideal, or of the inmate's choosing. *See* United States v. Derbes, 369 F.3d 579, 583 (1st Cir. 2004) (stating that prison administrators are "by no means required to tailor a perfect plan for every inmate; while [they are] constitutionally obligated to provide medical services to inmates, these services need only be on a level reasonably commensurate with modern medical science and of a quality acceptable within prudent professional standards." (internal quotation marks and citations omitted)). Rather, the Constitution

proscribes care that is " 'so inadequate as to shock the conscience.' " Torraco v. Maloney, 923 F.2d 231, 235 (1st Cir. 1991), *quoting* Sires v. Berman, 834 F.2d 9, 13 (1987).[4]

If an inmate diagnosed with gender dysphoria has been medically prescribed laser hair removal or electrolysis, then the denial of electrolysis may suffice to state an Eighth Amendment claim of deliberate indifference to a serious medical need. *See* Alexander v. Weiner, 841 F.Supp.2nd 486, 492-93 (D.Mass. 2012) (noting that multiple doctors prescribed this treatment on at least three occasions). In contrast, a complaint is insufficient to state an Eighth Amendment claim in the absence of allegations that the inmate was diagnosed with gender dysphoria or prescribed with the requested treatment. *See* Collymore v. Suffolk County Sheriff Dept., 2019 WL 358678 (D.Mass. 2019) (allowing motion to dismiss inmate's Eighth Amendment claim for denial of estrogen therapy where the plaintiff did not allege that she had been diagnosed with gender dysphoria or prescribed estrogen before her incarceration).

Here, Plaintiff's claim must be dismissed because she has failed to plead sufficient facts to support the existence of a serious medical need and the inadequacy of the medical care provided. She does not sufficiently allege that she has been diagnosed with a significant medical need for

---

[4] When an inmate claims that her ongoing treatment was inadequate, the objective component of an Eighth Amendment claim requires a showing of care "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Rhinehart v. Scutt, 894 F.3d 721, 737–38 (6th Cir. 2018) (citations omitted). The inmate must present enough evidence for a factfinder to evaluate the adequacy of the treatment provided and the severity of the harm caused by the allegedly inadequate treatment. The inmate must provide "medical proof that the provided treatment was not an adequate medical treatment of [the inmate's] condition or pain." Id., *citing* Santiago v. Ringle, 734 F.3d 585, 591 (6th Cir. 2013). This will often require "expert medical testimony... showing the medical necessity for" the desired treatment and "the inadequacy of the treatments" the inmate received. Id., *citing* Anthony v. Swanson, 701 F.Appx. 460, 464 (6th Cir. 2017); *see* Pearson v. Prison Health Serv., 850 F.3d 526, 535 (3d Cir. 2017) (adequacy-of-care claims may require expert testimony "to create a genuine dispute that the prisoner's medical needs are serious"). The inmate also must "place verifying medical evidence in the record to establish the detrimental effect" of the inadequate treatment. Id. (citations omitted); *see* Dulaney v. Carnahan, 132 F.3d 1234, 1240 (8th Cir. 1997) (in the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that she did not feel that she received adequate medical treatment).

electrolysis. While Plaintiff alleges that she was diagnosed with gender dysphoria,[5] nowhere in the Amended Complaint does she allege that any clinician ever prescribed electrolysis, or that she was receiving electrolysis per a doctor's order before she entered the HOC. She alleges that "electrolysis is a necessary medical procedure for transgender women because without it the patient cannot move forward with their gender transition and their gender reassignment surgery," but she does not claim that a physician has determined that she is a candidate for reassignment surgery, let alone that electrolysis is a medically necessary prerequisite for her. She also alleges generally that living with male body hair and facial hair triggers dysphoric thoughts and depression, but she does not allege that she has suffers or has been diagnosed as suffering from dysphoric thoughts or depression specifically attributable to a need for electrolysis.[6] Finally, she alleges that electrolysis is part of the standards of medical care set by WPATH (World Professional Association for Transgender Health." ***Doc. 15, Am. Compl., ¶ 20***. However, the WPATH Standards of Care do not reflect medical consensus, but merely one side in a sharply contested medical debate over sex reassignment surgery. Gibson v. Collier, 920 F.3d 212, 221 (5th Cir.), *cert. denied*, 140 S.Ct. 653, 205 L.Ed. 2d 384 (2019) (analyzing and following Kosilek v. Spencer, 774 F.3d 63 (1st Cir. 2014) (*en banc*)). Therefore, Plaintiff has failed to state a federal constitutional claim of entitlement to electrolysis.

---

[5] Plaintiff alleges that she began living as a female about three years ago and has been receiving hormone treatments since November 1, 2018. She legally changed her former male name to a female name on November 22, 2019, and her gender marker with the Massachusetts Registry of Motor Vehicles reflects her gender as a female. ***Doc. 15, Am. Compl.*, ¶ 13**.

[6] Plaintiff offers only general recitations in each count of the complaint that "Defendants' actions have caused [her] to suffer from depression and anxiety and have impaired [her] ability to participate in basic life activities." *See **Doc. 15, Am. Compl., ¶¶ 34, 37, 38, 41, 44, 47, 50, 53, 56, 60***. She does not affiliate such depression, anxiety, or impairment of her ability to participate in basic life activities with a need for electrolysis.

### 2. *Plaintiff's claim against NaphCare, Inc. must be dismissed for failure to plead sufficient facts to show deliberate indifference to a serious medical need.*

To satisfy the subjective prong of the deliberate-indifference inquiry, an inmate must show that "prison administrators exhibit deliberate indifference to the prisoner's needs." Kosilek, 774 F.3d at 83, *citing* Estelle, 429 U.S. at 105-06. "[D]eliberate indifference 'defines a narrow band of conduct' . . . and requires evidence that the failure in treatment was purposeful." Id., *quoting* Feeney v. Corr. Med. Servs. Inc., 464 F.3d 158, 162 (1st Cir. 2006); *see* Estelle, 429 U.S. at 105. The level of culpability must go beyond malpractice. Estelle, 429 U.S. at 106. "[D]isagreements between prisoners and doctors about the proper course of a prisoner's medical treatment" are insufficient for an Eight Amendment claim. Watson v. Caton, 984 F.2d 537, 540 (1st Cir. 1993). Deliberate indifference may "be exhibited by a 'wanton disregard' to a prisoner's needs." Kosilek, 774 F.3d at 83, *quoting* Battista v. Clarke, 645 F.3d 449, 453 (1st Cir. 2011). "[S]uch disregard must be akin to criminal recklessness, requiring consciousness of 'impending harm, easily preventable.'" Id., *quoting* Watson, 984 F.2d at 540. "[S]ubjective intent is often inferred from behavior," and "a deliberate intent to harm is not required." Battista, 645 F.3d at 453, *citing* Farmer, 511 U.S. at 835. A prisoner can show wanton disregard by presenting evidence of "denial, delay, or interference with prescribed health care." Id., *quoting* DesRosiers v. Moran, 949 F.2d 15, 19 (1st Cir. 1991). Neither "insufficient zeal for efficiency" nor "misjudgment, even negligent misjudgment" is equivalent to deliberate indifference. Ramos v. Patnaude, 640 F.3d at 491.

Here, Plaintiff has failed to plead sufficient facts to show deliberate indifference. Because she has failed to delineate a serious medical need for electrolysis, Plaintiff cannot contend that the denial of such care constitutes deliberate indifference by the medical professionals who deemed electrolysis not medically necessary for her. At best, she is claiming denial of treatment of her choice, not of medically required treatment. *See* Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988)

11

("Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice"). Therefore, the Plaintiff has failed to state a constitutional claim for denial of medical care.

> **B. Plaintiff's Section 1983 claims against NaphCare, Inc. must be dismissed for failure to state claims for denial of Equal Protection and Procedural Due Process.**

Plaintiff fails to assert viable claims for denial of equal protection or procedural due process. A claim may lie under the Equal Protection Clause if the government fails to accord similar treatment to persons who are similarly situated. *See* Barrington Cove. Ltd. Partnership v. Rhode Island Housing and Mort. Financing Corp., 246 F.3d 1, 7 (1st Cir. 2001), *citing* City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439-40 (1985). A party "claiming an equal protection violation must first 'identify and relate specific instances where persons similarly situated in all relevant aspects were treated differently, instances which have the capacity to demonstrate that [plaintiffs] were singled ... out for unlawful oppression.' " Rubinovitz v. Rogato, 60 F.3d 906, 910 (1st Cir. 1995) (*emphasis in original*), *quoting* Dartmouth Review v. Dartmouth Coll., 889 F.2d 13, 19 (1st Cir. 1989). "An individual is 'similarly situated' to others for equal protection purposes when 'a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated.' " Davis v. Coakley, 802 F.3d 128, 133 (1st Cir. 2015), *quoting* Barrington Cove Ltd. P'ship v. Rhode Island Hous. & Mortg. Fin. Corp., 246 F.3d 1, 8 (1st Cir. 2001).

Here, Plaintiff alleges only that the Defendants violated her "rights under the Equal Protection Clause of the Fourteenth Amendment by impermissibly discriminating against [her] on the basis of [her] sex, gender identity, transgender status, and disability." ***Doc. 15, Am. Compl., ¶ 40***. She fails to allege the elements of an equal protection claim against NaphCare, which is that she has been treated differently from any other similarly situated person, specifically, other HOC

inmates who have been diagnosed with gender dysphoria. Plaintiff does not allege that she is being denied electrolysis that is being provided to other gender dysphoria inmates. Thus, she lacks the essential element, which is disparate governmental treatment based upon impermissible considerations, compared with the treatment of similarly situated inmates at the HOC. *See* Wilburn v. Walsh, 584 F.Supp. 384, 394-95 (D.Mass. 2008). Plaintiff's failure to allege how NaphCare treated her differently than other HOC inmates entitles NaphCare to dismissal of the equal protection claim.

Plaintiff's procedural due process claim is misplaced. Consideration of procedural due process requires a two-step analysis. Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454, 460 (1989). The first question is whether there is any identifiable liberty or property interest with which the state has interfered. Board of Regents v. Roth, 408 U.S. 564, 571 (1972). If there is a liberty or property interest, the second question is whether the procedures attendant upon deprivation of the liberty or property interest are constitutionally sufficient. Hewitt v. Helms, 459 U.S. 460, 472 (1983). The process due depends largely upon the circumstances. Mathews v. Eldridge, 424 U.S. 319, 335 (1976). Plaintiff's Fourteenth Amendment claim does not implicate procedural due process because providing adequate medical care to inmates is an affirmative duty of government. *See* DeShaney v. Winnebago County Dept. of Social Services, 489 U.S. 189, 198 (1989). This duty cannot be diminished by providing a hearing. Therefore, NaphCare is entitled to dismissal of the procedural due process claim.

### C. **Plaintiff's state constitutional claims against NaphCare, Inc. must be dismissed because state law claims cannot be brought under Section 1983.**

Plaintiff invokes Articles 1, 7, 106 and 114 of the Massachusetts Declaration of Rights. *Doc. 15, Am. Compl., ¶¶ 45-53*.[7] Because Section 1983 requires violation of a federal constitutional or statutory right, the alleged failure to properly follow state law or regulations cannot provide the basis for a Section 1983 claim. *See* Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 106 (1984); Quintero de Quintero v. Aponte-Roque, 974 F.2d 226, 230 (1st Cir. 1992). Section 1983 does not provide a statutory vehicle for the enforcement of Massachusetts constitutional rights. Phillips v. Youth Development Program, Inc., 390 Mass. 652, 658 n. 4, *citing* Parratt v. Taylor, 451 U.S. 527, 535 (1981); Paul v. Davis, 424 U.S. 693, 700-701 (1976). Therefore, Plaintiff's state constitutional claims must be dismissed.[8]

---

[7] Article 1 affords due process protection equivalent to that provided by the Fourteenth Amendment. City of Boston v. Keene Corporation, 406 Mass. 301, 308 (1989) (*citing* Opinion of the Justices, 373 Mass. 883, 885 (1977). Article 1 affords equal protection guarantee to the guarantees in the First and Fourteenth Amendments. Zeller v. Cantu, 395 Mass. 76, 83-84 (1985). Article 7 "provides, in relevant part: "Government is instituted for the common good; for the protection, safety, prosperity, and happiness of the people; and not for the profit, honor, or private interest of any one man, family or class of men...." In re Opinions of the Justices to the Senate, 440 Mass. 1201, 1202 (2004). Article 106 requires equal protection under the law. Finch v. Commonwealth Health Insurance Connector Authority, 459 Mass. 655, 662 (2011). Article 114 prohibits discrimination on the basis of disability. Layne v. Supt., Mass. Correctional Inst. Cedar Junction, 406 Mass. 156, 168 (1989).

[8] The Supreme Judicial Court appears to have foreclosed the possibility of bringing suit directly under the Declaration of Rights. In Cantell v. Commissioner of Correction, 475 Mass. 745 (2016), the inmate plaintiffs sought to bring a state constitutional procedural due process challenge to non-disciplinary segregated confinement. At issue was whether the plaintiffs were foreclosed from doing so by the earlier decision in LaChance v. Commissioner of Correction, 463 Mass. 767 (2012), which addressed procedural due process attendant to non-disciplinary segregated confinement. Noting that LaChance's damages claim for alleged procedural due process violations was decided on appeal on the basis of qualified immunity, the Court in Cantell reasoned that only the federal procedural due process claim could have been resolved in the LaChance case, thereby leaving the road open for the Cantell plaintiffs to proceed with their state procedural due process claim in the new action. Cantell, 475 Mass. at 755. The state constitutional claims were not before the Court on appeal because the due process protections of the Declaration of Rights do not afford an independent basis for damages in the absence of a jurisdictional vehicle for bringing the claim. LaChance's claim under the Massachusetts Civil Rights Act, M.G.L. c. 12, § 11 (H) and (I), which could have served as the vehicle for a state constitutional claim, had been dismissed, and his Section 1983 claim could not serve as the basis for adjudicating state constitutional rights. In the absence of a jurisdictional vehicle, the state constitutional claim was effectively extinguished, leaving only the federal claim for

### D. Plaintiff's claim against NaphCare must be dismissed because NaphCare, Inc. is not liable for the alleged constitutional violations of its employees.

Plaintiff seeks to hold NaphCare liable for civil rights violations under 42 U.S.C. § 1983 based on a NaphCare employee's determination that electrolysis was not medically indicated. This claim fails because the legal theory of *respondeat superior* is not applicable to civil rights claims under § 1983. "It is well-established that 'only those individuals who participated in the conduct that deprived the plaintiff of his rights can be held liable' " under § 1983. Velez-Rivera v. Agosto-Alicea, 437 F.3d 145, 156 (1st Cir. 2006 *quoting* Cepero-Rivera v. Fagundo, 414 F.3d 124, 129 (1st Cir. 2005). "Thus, NaphCare cannot be held liable for any deliberate indifference to plaintiff's serious medical needs by its employee unless the employee, by denying needed medical care to plaintiff, was acting pursuant to an official policy or custom of NaphCare, and the policy or custom was the direct cause of the harm alleged." Buchanan v. Hamilton Cty. Sheriff's Dep't, No. 1:10-CV-503, 2012 WL 6761507, at *6 (S.D. Ohio Nov. 26, 2012) (dismissing complaint against NaphCare for failure to state a claim in the absence of an allegation of a custom or policy on the part of NaphCare).

The Amended Complaint fails to allege any facts showing that a NaphCare employee acted pursuant to a policy or custom of NaphCare by allegedly violating Plaintiff's constitutional rights. Plaintiff alleges only that NaphCare denied electrolysis because it was not "medically indicated." Because there is no allegation of a custom or policy on the part of NaphCare, the complaint fails to state a claim for relief against NaphCare for violation of Plaintiff's constitutional rights.

---

adjudication on appeal. More recently, the Massachusetts Appeals Court held that damages against state officials cannot be sought directly under the Massachusetts Constitution. Doe v. Sex Offender Registry Board, 94 Mass.App.Ct. 52, 65 (2018) ('[W]e are not willing to abrogate sovereign immunity by fashioning a judicial remedy where the Legislature did not.")

## CONCLUSION

Defendant NaphCare, Inc. respectfully requests that the Court dismiss the Amended Complaint against NaphCare, Inc. for the reasons set forth above.

                        Respectfully submitted,

                        Defendant NaphCare, Inc.,

                        By its attorneys,

                        */s/ William D. Saltzman*
                        William D. Saltzman, BBO #439749
                        Victor Koufman, BBO #545296
                        KOUFMAN & FREDERICK, LLP
                        145 Tremont Street, 4th Floor
                        Boston, MA 02111
                        (617) 423-2212
Dated: June 29, 2020          ws@kflitigators.com

## *CERTIFICATE OF SERVICE*

I, William D. Saltzman, certify that on the 29th day of June, 2020, a copy of the above pleading was filed with the ECF System and sent electronically to the registered participants identified on the Notice of Electronic Filing, with paper copies being sent to those indicated as non-registered participants.

                        /s/ *William D. Saltzman*
                        William D. Saltzman