**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

---

| | |
|---|---|
| JENNAYA BENNETT-WERRA, ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:20-cv-10017-ADB |
| ) | |
| STEVEN TOMPKINS, et al., ) | |
| Defendants. ) | |

---

<u>**DEFENDANTS' MEMORANDUM IN SUPPORT**
**OF THEIR MOTION TO DISMISS THE PLAINTIFF'S COMPLAINT**</u>

Defendants Sheriff Steven Tompkins, Yolanda Smith, Zezinha Mitchell, Christina Ruccio and Jennifer Sullivan ("***Defendants***") respectfully request that this Court dismiss the Plaintiff's Complaint against them for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6).

**INTRODUCTION**

The Plaintiff, Jennaya Bennett-Werra, is a transgendered pre-trial detainee in the custody of the Sheriff of Bristol County who is being held as a "Safe-Keep"[1] at the Suffolk County House of Correction ("**SCHOC**"). The Plaintiff has filed a lawsuit against Steven Tompkins, the Sheriff of Suffolk County, Yolanda Smith, the Special Sheriff and Superintendent of the Suffolk County Sheriff's Department, Zezinha Mitchell, Director of Classification, Christina Ruccio, Director of Women's Programming and Jennifer Sullivan, Grievance Coordinator. The Plaintiff has also named NaphCare, Inc., the contracted medical provider at the Suffolk County House of Correction as a Defendant.[2] The crux of the Plaintiff's complaint is: that she is not being housed in the women's unit at the SCHOC, which has put her in jeopardy for sexual

---

[1] A "Safe-Keep" is an inmate whom the Sheriff of Suffolk County has agreed to hold for another County or for the Department of Correction.

[2] NaphCare is represented by separate counsel.

assaults; that she is being treated differently than other female inmates; that the staff at the SCHOC uses incorrect pronouns when speaking with her; that the staff does not refer to her with her chosen female name; and that she has been denied electrolysis.[3]  The Plaintiff asserts that the Defendants have violated her rights under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act, (**Counts I & II**), 42 U.S.C § 1983, (14th Amendment of the U.S. Constitution)(**Counts III-IV, VIII**), MA State Constitution (**Counts V-VII**); and The Prison Rape Elimination Act, (**Count IX**).

**FACTUAL ALLEGATIONS**

1. On April 10, 2019, the Plaintiff was transferred to the SCHOC from the Bristol County House of Correction. (***Amended Compl. ¶ 4***)

2. Since the Plaintiff's arrival at the SCHOC she has been asking to be housed on a female unit. (***Amended Compl. ¶ 14***)

3. On June 21, 2019, the Plaintiff filed a grievance requesting to move to the female unit. (***Amended Compl. p. 23***) On June 28, 2019, the Department responded to the Plaintiff's grievance stating "You will not move to the female unit at this time. You may participate in the transgender support group."  (***Amended Compl. p. 23***)

4. On July 2, 2019, the Plaintiff filed a grievance stating that she wanted to receive electrolysis to remove body hair, which she states is a necessary procedure in treating people with gender dysphoria.  (***Amended Compl. p. 19***)

5. On July 5, 2019, the Department responded to Plaintiff's grievance concerning electrolysis by attaching a response from NaphCare, Inc., which states that "Unfortunately, Electrolysis is not medically indicated." (***Amended Compl. p. 19***)

---

[3] Apparently the Plaintiff has not apprised the Court of the fact that she is now housed in the women's unit at the SCHOC. This decision was made before the Defendants had knowledge of her litigation.

6. On July 3, 2019, the Plaintiff filed a Grievance Appeal concerning the fact that she was not being housed on a female unit. (***Amended Compl. p. 27***)

7. On July 3, 2019, the Plaintiff filed a Grievance Appeal complaining that inmates in her unit "do not have access to the library like everyone else." (***Amended Compl. p. 28***)

8. On July 9, 2019, the Plaintiff filed a Grievance Appeal concerning the denial of her request for electrolysis. (***Amended Compl. p. 26***)

*9.* On July 10, 2019, Superintendent Yolanda Smith met with the Plaintiff and denied her request to be transferred to the female unit; however she allowed her request to attend women's programming which commenced on July 26, 2019. (***Amended Compl. ¶  15***)

10. On July 24, 2019, the Plaintiff filed a grievance stating that her PREA rights were being violated because she was housed with people who are high risk predators due to their sex crimes, and stated that she has "already been a victim of PREA in Bristol County."  (***Amended Compl. p. 22***)  On July 30, 2019, the SCSD responded stating: "The incident in Bristol is still being investigated. You are on house alone status.  You will be attending programs with the females."  (***Amended Compl. p.  22***)

*11.* On August 1, 2019, Superintendent Yolanda Smith responded to the Plaintiff's Grievance Appeal concerning her access to the library stating: "You have access to the library based on the unit.  You will be able to go to the library with the women.  Please allow time for me to coordinate that." (***Amended Compl. p. 28***)

*12.* On August 1, 2019, Superintendent Yolanda Smith responded to the Plaintiff's Grievance Appeal concerning her request for Electrolysis by stating "Please forward this request to NaphCare they are our Medical Contractor and handle such issues." (***Amended Compl. p. 26***)

*13.* The Plaintiff was offered the option of returning to the Bristol County House of Correction; however she declined due to perceived safety risks at that facility.  (***Amended Compl. ¶ 16***)

*14.*   On September 8, 2019, Superintendent Yolanda Smith responded to the Plaintiff's Grievance Appeal, concerning not being housed in a female unit, by stating the following: "Ms. Bennett, you and I have spoken about this at great length.  You are housed alone in your cell, you shower at different times than everyone else and you attend programs with the women." (***Amended Compl. p. 27***)

*15.* The Plaintiff asserts that on September 8, 2019, she was sexually assaulted and that this incident was investigated by the Sheriff's Investigation Division who found her statements to be true. The Plaintiff asserts that she has also been threatened with physical violence. (***Amended Compl. ¶ 18***)

*16.* On September 23, 2019, the Plaintiff filed a grievance complaining that Christina Ruccio (Director of Women's Programming) informed her that she was taken off of women's programming for a week because she had received a disciplinary report. The Plaintiff was grieving the fact that the other female inmate involved in the disciplinary incident did not lose her program privileges but still received 48 hours of restricted movement. The Plaintiff complained that she was being treated differently than the other woman involved in the incident. (***Amended Compl. p. 24***)  On October 8, 2019, the Department responded to the grievance stating: "Director Ruccio spoke to you and the other detainee about the incident." (***Amended Compl.  p. 24***)

17. On October 23, 2019, the Plaintiff filed a grievance asserting that a Lieutenant referred to her as a man. (***Amended Compl. p. 25***)  The SCSD responded to the grievance by stating that "All staff have been trained on how to respond and interact with respect to transgender inmates." (***Amended Compl. p. 25***)

18. On November 19, 2019, the Plaintiff appealed the denial of her grievance, concerning her one week suspension from women's programming, on the grounds that she felt she received a D-

Report because of her transgender status; that if she had been housed on a women's unit it would not have happened; and that she was already "spending more time with the female inmates than the men." The Plaintiff also stated that the officer who wrote the D-Report used male pronouns. (***Amended Compl. p. 21***)

19. On December 3, 2019, Superintendent Yolanda Smith responded to the Plaintiff's Grievance Appeal, concerning her one week suspension of programs, by restoring her privileges to women's programming. Superintendent Yolanda Smith also stated the following: "Jennaya, I will absolutely speak with staff about using proper pronouns when referring to you! Your privileges are going to be restored. Please do not pass notes between the other women and the men." (***Amended Compl. p. 21***)

20. The Plaintiff has been allowed to attend all programming, library time and gym/yard time with the women at the SCHOC. (***Amended Compl. ¶ 62.***)

## I.    **ARGUMENT**

### A.  LEGAL STANDARD FOR MOTION TO DISMISS

Rule 12 of the Federal Rules of Civil Procedure provides that a complaint can be dismissed for, among other things, "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). To state a claim, a plaintiff must set forth (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to relief"; and (3) "a demand for the relief sought." Fed.R.Civ.P. 8(a).

When deciding a motion to dismiss, the court accepts as true the factual allegations of the complaint, draws all reasonable inferences in favor of the plaintiff that are supported by the factual allegations, and determines whether the complaint, so read, sets forth a claim for recovery that is " 'plausible on its face.' Eldredge v. Town of Falmouth, 662 F.3d 100, 104 (1st Cir.2011) (quoting, Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotation marks omitted)). "A claim is facially plausible if supported by

'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Iqbal, 556 U.S. at 678). A plaintiff's complaint need not provide an exhaustive factual account, only a short and plain statement. Fed.R.Civ.P. 8(a). However, the allegations must be sufficient to identify the manner by which the defendant subjected the plaintiff to harm and the harm alleged must be one for which the law affords a remedy. Iqbal, 556 U.S. at 678.

Legal conclusions couched as facts and "threadbare recitals of the elements of a cause of action" will not suffice. Iqbal, 556 U.S. at 678; see also, Ocasio–Hernández v. Fortuño–Burset, 640 F.3d 1, 12 (1st Cir.2011). In ruling on a motion to dismiss, the Court may disregard "bald assertions, unsupportable conclusions, and opprobrious epithets." In re Citigroup, Inc., 535 F.3d 45, 52 (1st Cir.2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is *plausible* on its face." Ashcroft v. Iqbal, 556 U.S. at 678.

Even assuming the Court will construe Bennett-Werra's complaint liberally because it was filed *pro se*;[4] *pro se* status does not insulate a party from complying with procedural and substantive law. Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir.1997). Dismissal of a pro se complaint is appropriate when the complaint fails to state an actionable claim. Muller v. Bedford VA Admin. Hosp., No. 11–10510, 2013 WL 702766, at *3 (D.Mass.) Feb. 25, 2013) (citing, Overton v. Torruella, 183 F.Supp.2d 295, 303 (D.Mass.2001)).

## II.    THE DEFENDANTS ARE ENTITLED TO DISMISSAL OF PLAINTIFF'S CLAIMS UNDER THE ADA AND REHABILITATION ACT IN COUNTS I AND II.

### Americans with Disabilities Act Standard

Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (2012). The

---

[4] See, Erickson v. Pardus, 551 U.S. 89 (2007).

Rehabilitation Act provides that "no otherwise qualified individual with a disability… shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). The Plaintiff's claims under the ADA and the Rehabilitation Act are identical, and therefore may be addressed together. See McCauley v. Groblewski, No. 14-CV-12732, 2018 WL 4119641, at *13 (D. Mass. Aug. 29, 2018).[5]

In order to establish a violation under Title II of the ADA, the Plaintiff must allege: "(1) that [s]he is a qualified individual with a disability; (2) that [s]he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities…; and (3) that such exclusion, denial of benefits or discrimination was by reason of h[er] disability." Toledo v. Sanchez, 454 F.3d 24, 31 (1st Cir. 2006) quoting Parker v. Universidad de Puerto Rico, 225 F.3d 1, 4 (1st Cir. 2000).

For the purposes of this Motion the Defendants do not dispute that the SCSD is a public entity and that Ms. Bennett-Werra is a qualified individual with a disability.[6]  However, the Defendants deny that they excluded the Plaintiff from participation in or denied her the benefit of programs or activities because of her

---

[5] The Plaintiff's claims against the Defendants pursuant to the Rehabilitation Act in Count II should be dismissed for failure to state a claim where she does not allege that the Suffolk County Sheriff's Department ("**SCSD**") is a "federal agency, contractor [or] recipient of federal financial assistance." Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004). Nor has Bennett-Werra alleged that the SCSD is federally funded. See Jenkins v. Bos. Hous. Court, 350 F. Supp. 3d 1, 6 (D. Mass. 2018) ("Absent any allegation that defendant BHC is the recipient of federal funding, plaintiff has failed to allege an element of a § 504 claim[.]"). See Cross v. Commonwealth of MA, No. 18-11765-RGS, 2019 WL 1936735 at *4 (D. Mass., May 1, 2019). The Plaintiff therefore, fails to state a valid Rehabilitation Act claim against the Defendants. See also McDonald v. Commonwealth of MA, 901 F.Supp. 471, 479-479 (1995)("At no place in his amended complaint does McDonald make any allegation with respect to "federal financial assistance." On this ground alone, the amended complaint is fatally deficient under Rule 12(b)(6) for failing to state a claim. See, e.g.,Simpson, 629 F.2d at 1231–2. Any claims premised upon purported violations of the Rehabilitation Act should be dismissed.")

[6] The Defendants recognize that there is significant disagreement as to whether gender dysphoria falls into the ADA's categorical exclusion among the courts who have discussed this issue.  The ADA exempts "gender identity disorders not resulting from physical impairments from the definition of disability." 42 U.S.C. § 12211(b)(1). Further, the Plaintiff has arguably not met the threshold for asserting an ADA claim based upon gender dysphoria because nowhere in her complaint has she even alleged that her gender dysphoria results from a physical impairment. See Parker v. Strawser Construction, 307 F. Supp. 3d 744, 754-755 (S.D. Ohio 2018)(holding that  the Plaintiff's failure to allege that her gender dysphoria was caused by a physical impairment, or that gender dysphoria always results from a physical impairment, barred her ADA claim.) However, for the purposes of this Motion, the Defendants do not argue this point.

disability.   It is clear from the Plaintiff's complaint, and the SCSD's responses to her grievances and grievance appeals,[7] that while the Plaintiff was not immediately assigned to a women's unit at the Suffolk County House of Correction the SCSD worked closely with her to ensure that she could assimilate with other women at the prison.   These effects included allowing her to **participate** in women's activities including women's programming, the transgender support group, library time, and she was allowed to go to the gym/yard with the women.

In fact the Superintendent personally met with the Plaintiff to discuss her requests, and to inform her she would be allowed to attend programs with the women.   The SCSD's efforts to ensure that the Plaintiff was not denied the benefit of women's programs and activities because of her disability is underscored by the Plaintiff's statements in November of 2019 that she was already "**spending more time with the female inmates than the men**." (***Amended Complaint p. 25***)  Plaintiff's admissions demonstrate the concerted efforts that the SCSD made to reasonably accommodate the Plaintiff's disability.

In addition to allowing the Plaintiff to participate in women's programming, the SCSD accommodated the Plaintiff by providing her with a single cell, and scheduling her showers at different times than everyone else.   While the Plaintiff complains that she has not been addressed by discreet prison personnel with the proper pronouns, the SCSD made sure that she was aware that "All staff have been trained on how to respond and interact with respect to transgender inmates," (***Amended Complaint p. 21***); and the Superintendent personally assured her that she would "absolutely speak with staff about using proper pronouns when referring to you!" (***Amended Complaint p. 25***)  Lastly, when the Plaintiff grieved that she had received discipline for passing notes between male and female inmates, which resulted in her losing privileges, the Superintendent informed her that her privileges would be restored, and politely

---

[7] The Plaintiff attached several of her grievances and grievance appeals as exhibits to her Complaint which are referenced as DKT No. 15 pp. 19-28. For the Court's convenience these **same exhibits** (pp. 19-28) are referenced in Exhibit 1 to the Defendants' Memorandum in Support of their Motion to Dismiss since some of the Plaintiff's exhibits are illegible.

requested that the Plaintiff "Please do not pass notes between the other women and the men." (***Amended Complaint p. 25***)

While the Plaintiff has received numerous reasonable accommodations for her disability, her suit primarily alleges an ADA violation because she was not classified to the women's unit.[8]  However, this case is dissimilar to Doe v. Massachusetts Department of Correction, No. 17-12255-RGS, 2018 WL 2994403 (D. Mass. June 14, 2018), where the MA Department of Correction ("**DOC**") failed to make **any** accommodations for the Plaintiff by continuing to house Doe in a male prison, and denying her access to women's programs and services.  Here, that is clearly not the case.  Unlike Doe, the SCSD has a women's unit at the SCHOC, and has made every effort to ensure that the Plaintiff accessed women's programs and services in such a manner that she was allowed to live as a woman at the SCHOC.  In Doe the Plaintiff was unable to do this in any capacity.

### Plaintiff's Medical Claims Fall outside of the ADA.

Similarly, Bennett-Werra's ADA claim in relation to her request for electrolysis must also fail.  While Bennett-Werra is free to disagree with the denial of her request for electrolysis, medical judgments "do not ordinarily fall within the scope of the ADA or Rehab Act." See Fitzgerald v. Corrections Corporation of America, et al., 403 F.3d 1134, 1144 (10th Cir. 2005); Schiavo v. Schiavo, 403 F.3d 1289, 1294 (11th Cir. 2005) ("The Rehab[ ] Act, like the ADA, was never intended to apply to decisions involving ... medical treatment."). As one court succinctly put it, "[t]he decision was simply a reasoned medical judgment with which the patient disagreed. As to such disagreements, when they warrant litigation, state medical malpractice law, not the Rehab [] Act, provides the appropriate law of resort." Lesley v. Hee Man Chie, 250 F.3d 47, 58 (1st Cir. 2001).  Accordingly, Ms. Bennett-Werra's allegations that a medical provider's decision to deny her electrolysis is a violation of the ADA and Rehabilitation Act is also without merit.

---

[8] In Doe v. Massachusetts Department of Correction, No. 17-12255-RGS, 2018 WL 2994403 (D. Mass. June 14, 2018), Judge Stearns denied the DOC's Motion to Dismiss under the ADA finding that the Plaintiff had adequately pled that she had been denied the reasonable accommodation of transfer to a women's prison.

The Plaintiff has not been denied access to programs and services that correspond to her gender identity, and therefore the Defendants respectfully request that this Court dismiss Counts I and II of the Amended Complaint where the Plaintiff has failed to state a claim under the ADA and Rehabilitation Act.

### III.    THE PLAINTIFF'S CONSTITUTIONAL CLAIMS MUST BE DISMISSED.

The Plaintiff brings constitutional claims for monetary damages and prospective injunctive relief in Counts III (Equal Protection), IV (Due Process) and VIII (42 U.S.C. § 1983, Violation of Civil Rights)[9] of her Amended Complaint.  The Defendants respectfully request that this Court dismiss the Plaintiff's claims for monetary damages against them because she has **only** sued them in their official capacity.  Official capacity suits for monetary damages against a state entity fail to state a claim upon relief can be granted pursuant to 42 U.S.C. § 1983.  Further, while the Plaintiff has made it clear that she has not sued the Defendants in their individual capacity even she had the Plaintiff still fails to state an actionable claim because the Defendants in no way violated the Plaintiff's constitutional rights.

### A.    DEFENDANTS ARE ENTITLED TO DISMISSAL BECAUSE THEY ARE NOT "PERSONS" FOR PURPOSES OF LIABILITY IN THEIR OFFICIAL CAPACITY UNDER 42 U.S.C. § 1983.

The Plaintiff has sued Defendants Tompkins, Smith, Mitchell, Sullivan and Ruccio in **their official capacity only**. (***Complaint ¶¶ 6-10***)   The Plaintiff's complaint fails to state a claim against them because an official capacity suit is in effect a suit against the public entity, and the Eleventh Amendment confers immunity upon the SCSD.

When an individual files an action against a public official in his or her official capacity based on a violation of 42 U.S.C. §1983, it is only another way of pleading an action against the public entity that the official represents. See <u>Monell v. Dept. of Social Serv</u>. 436 U.S. 658, 690, n. 55 (1978); <u>Brandon v. Holt</u>, 469 U.S. 464, 471 (1985), ("official- capacity suit is … to be treated as a suit against an entity"); <u>Kentucky v.</u>

---

[9] Section 1983 "merely provides a method for vindicating federal rights elsewhere conferred" and is not itself a source of substantive rights." <u>Graham v. Connor</u>, 490 U.S. 386, 393-94 (1989).  Therefore Count VIII should be dismissed on these grounds alone.

Graham, 473 U.S. 159, 165-166 (1985) (official capacity suit is not a suit against the official personally, for the entity is the real party in interest).   42 U.S.C. §1983 provides in pertinent part: "*Every person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution…". (emphasis added) 42 U.S.C. §1983.  Thus §1983 claims lie only against "persons." Id. The Supreme Court has held that states, including state officials in their official capacities, are not "persons" subject to suit under §1983. Will v. Michigan Dept. State Police, 491 U.S. 58, 71 (1989).

The Plaintiff's complaint makes clear that she has sued all Defendants in their official capacity only which is in essence a suit against the Suffolk County Sheriff's Department. Therefore, all claims against the individually named Defendants in their official capacity for monetary damages must be dismissed.

1. **The Eleventh Amendment Bars Official Capacity Claims against the SCSD as a State Agency.**

As legislation pursuant to 42 U.S.C. § 1983 confers immunity upon States, the Plaintiff's civil rights claims against the SCSD must also be dismissed.

The Eleventh Amendment to the United States Constitution provides that states are not subject to suit in the federal courts of the United States. The federal courts have long held that they lack jurisdiction to entertain suits against individual states and their officials, unless the state has waived the immunity. See e.g., Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54 (1996), quoting Hans v. Louisiana, 134 U.S. 1, 15 (1890) (noting that "[f]or over a century we have reaffirmed that federal jurisdiction over suits against unconsenting States was not contemplated by the Constitution when establishing the judicial power of the United States"). See also Kentucky v. Graham, 473 U.S. 159, 167, n. 14 (1985) ("[u]nless a State has waived its Eleventh Amendment immunity or Congress has overridden it, … a State cannot be sued directly in its own name regardless of the relief sought").

11

Effective January 1, 2010, the Commonwealth of Massachusetts assumed control of the Suffolk County Sheriff's Department.[10]  As of that date, all Department employees became employees of the Commonwealth.  Mass. St. 2009, c. 61, §§13 & 15.  Thus, the Department and its employees acting in their official capacities are to be treated as the "Commonwealth" and accorded sovereign immunity.  This Court has repeatedly held that "modern Massachusetts Sheriff's Departments [are] arms of the state entitled to sovereign immunity." Jeffrey Gallo, et al v. Essex County Sheriff's Department, No. 10-10260-DPW, 2011 WL 1155385 at *3 (D. Mass., March 24, 2011)(Woodlock, J.); Adams v. Cousins, No. 06-40117-FDS, 2009 WL 1873584 at *6 (D. Mass., Mar. 31, 2009) (Essex County Sheriff) (Saylor, J.) ("As a state agency, the Sheriff's Department is protected by the state's immunity from suit under the Eleventh Amendment, unless the immunity is waived."); Christoforo v. Lupo, No. 03-12307-RGS, 2005 WL 3037076 at *3, n. 3 (D. Mass., Nov. 14, 2005) (Essex County Sheriff) (Stearns, J.) (damages claim dismissed against Essex County Sheriff in his official capacity, as the claim "is one against the Commonwealth and is therefore precluded by the Eleventh Amendment Sovereign Immunity Clause."); see also Kelley v. DiPaola, 379 F.Supp.2d 96, 100 (D. Mass. 2005) (Middlesex County Sheriff) (Gorton, J.) (official capacity §1983 claims dismissed against Sheriff and his employees because they are state officials, not subject to suit under §1983).

Absent a waiver of sovereign immunity, the Commonwealth and its subdivisions are immune from suit. Chapter 61 of the Acts of 2009 does not contain an unequivocal waiver of sovereign immunity. See Max-Planck-Gesellschaft Zur Foerderung Der Wissenschaften E.V. v. Whitehead Institute for Biomedical Research, 850 F. Supp.2d 317, 327 (D. Mass. 2011) (Saris, J.) (waiver of sovereign immunity given effect "only where stated by the most express language or by such overwhelming implication from the text as [will] leave no room for any other reasonable construction.")

---

[10] Mass. St. 2009, c. 61 (effective January 1, 2010) (transferring Barnstable, Bristol, Dukes, Nantucket, Norfolk, Plymouth and Suffolk Sheriffs and their employees to the Commonwealth).

Accordingly, any claims against the Defendants in Counts III, IV and VIII brought against them in their official capacity for monetary damages must be dismissed.

**B. DEFENDANTS CANNOT BE HELD LIABLE UNDER 42 U.S.C. § 1983 BASED UPON A RESPONDEAT SUPERIOR ARGUMENT.**

Even if the Plaintiff had asserted claims against the Defendants in their individual capacity Defendants Tompkins, and Sullivan are entitled to dismissal because there are no assertions in the body of the Plaintiff's Amended complaint against them.

The Plaintiff's civil rights claims against Defendants Tompkins and Sullivan must fail because there is no *respondeat superior* liability under 42. U.S.C. § 1983.  See Layne v. Vinzant, 657 F.2d 468, 471 (1st Cir. 1981). Federal courts have repeatedly found that § 1983 does not hold a supervisor responsible for the actions of his or her agents without direct affirmative action on the supervisor's part. "It is well-established that 'only those individuals who participated in the conduct that deprived the Plaintiff of his rights can be held liable [under § 1983].'" Velez-Rivera v. Agosto-Alicea, 437 F.3d 145, 156 (1st Cir. 2006) (quoting Cepero-Rivera v. Fagundo, 414 F.3d 124, 129 (1st Cir. 2005).  "In § 1983 cases, supervisors are not automatically liable for the misconduct of those under their command. A plaintiff must show an affirmative link between the subordinate [employee] and the supervisor, whether through direct participation or through conduct that amounts to condonation or tacit authorization.'" Velez-Rivera, 437 F.3d at 156, (quoting Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000)).

In the case at bar, the facts in the Plaintiff's complaint demonstrate that Defendants Tompkins, the Sheriff of Suffolk County, and Jennifer Sullivan, the Grievance Coordinator, had no personal interaction with the Plaintiff.  But for naming them in the preliminary statement, they are not referenced in the body of her Amended Complaint.  It is clear that Defendant Tompkins was named only because he is the Sheriff of Suffolk County.  It is not apparent why Defendant Sullivan was named except that she responded to one of the Plaintiff's grievances concerning electrolysis. (***Amended Complaint p. 19***)   These allegations are

13

clearly not enough to state a claim against these Defendants and they respectfully request that the Amended Complaint against them be dismissed.

### C. THE DEFENDANTS ARE ENTITLED TO DISMISSAL OF PLAINTIFF'S CLAIMS UNDER 42 U.S.C. §1983 FOR ELECTROLYSIS BECAUSE THEY WERE NOT DELIBERATLEY INDIFFERENT TO HER MEDICAL NEEDS.

Plaintiff alleges that the failure to provide her with electrolysis constitutes a violation of her civil rights pursuant to 42 U.S.C. § 1983.[11]  As argued above the Defendants sued in their individual capacity may be held liable only on the basis of their **own acts or omissions** under a theory of respondeat superior. The Plaintiff does not specify which Defendants allegedly violated her right to electrolysis; however, only Defendants Smith and Sullivan are even tangentially connected to the Plaintiff's claims where they responded to her grievance on this issue.  That is hardly enough to state a claim for a constitutional violation.  Further, in responding to the Plaintiff's grievance appeal on this issue Superintendent Smith made it clear to the Plaintiff that NaphCare, the medical provider, "handles such issues."  (***Amended Complaint p. 26***)

The 8th Amendment[12] protects inmates from "deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 105-106 (1976); Torraco v. Maloney, 923 F.2d 231, 234 (1st Cir. 1991).  In order to prevail on an 8th Amendment deliberate indifference claim, Plaintiff must establish (1) an unusually serious risk of harm; (2) defendant's actual knowledge (or at least, willful blindness to) that elevated risk; and (3) defendant's failure to take obvious steps to address that known serous risk." Manarite v. Springfield, 957 F.2d 953, 956 (1st Cir. 1992) cert. denied, 506 U.S. 837 (1992). The standard for deliberate indifference is a stringent one, "requiring proof that a [State] actor disregarded a known or obvious

---

[11] The Plaintiff does not state what right the Defendants violated; however, because she is asserting a denial of medical care this is typically analyzed under the deliberate indifference standard pursuant to the Eighth and Fourteenth Amendments.

[12] Because Plaintiff is a pre-trial detainee, her § 1983 claims are grounded in the Due Process Clause of the Fourteenth Amendment, rather than in the Eighth Amendment's proscription of cruel and unusual punishment, though the analysis is the same. See Burrell v. Hampshire County, 307 F.3d 1, 7 (1st Cir.2002).

consequence of his action." <u>Bd. of the County Commrs. of Bryan County v. Brown</u>, 520 U.S. 397, 410, 117 S.Ct. 1382 (1997).

Mere negligent or reckless medical treatment does not constitute deliberate indifference. Rather, according to the First Circuit, deliberate indifference requires "more than ordinary negligence and probably more than gross negligence." <u>Manarite v. City of Springfield</u>, 957 F.2d 953, 956 (1st Cir. 1991), <u>cert</u> <u>denied</u>, 506 U.S. 837, 113 S.Ct. 113 (1992). Specifically, the Plaintiff must show that Defendants were grossly negligent and "intended wantonly to inflict pain." <u>DesRosiers v. Moran</u>, 949 F.2d 15, 19 (1st Cir. 1991).

       **a.**   **<u>Corrections Officials are entitled to rely upon the Judgment of Medical Professionals as to Inmates' Needs for Medical Care.</u>**

The Defendants are entitled to dismissal of the Plaintiff's claims for electrolysis because the Defendants were not deliberately indifferent to the Plaintiff's medical needs. Here the Suffolk County Sheriff's Department has established a system to ensure that medical treatment and accommodation determinations are grounded in professional judgment, and accordingly they rely on professional medical judgments as to inmate care. Here, the SCSD reasonably relied on a medical doctor's decision that electrolysis was not medically indicated for the Plaintiff.

The Plaintiff is asking this Court to order the Defendants to provide her with electrolysis, despite the fact that a medical doctor, who works for NaphCare, a private corporation, has previously determined that it is not medically indicated. The Defendants are SCSD officials, not clinicians, and therefore, they are entitled to rely upon the judgment of medical professionals regarding an inmate's diagnosis and the medical care required. <u>Holden v. Hirner</u>, 663 F.3d 336, 343 (8th Cir. 2011); <u>Hayes v. Snyder</u>, 546 F.3d 516, 527 (7th Cir. 2008)("The policy supporting the presumption that non-medical officials are entitled to defer to the professional judgment of the facility's medical officials on questions of prisoners' medical care is a sound one."); <u>Spruill v. Gillis</u>, 372 F.3d 218, 236 (3d Cir. 2004) ("absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison

official … will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference.) See also Durmer v. O'Carroll, 991 F .2d 64, 69 (3d Cir.1993) (non-medical professionals not deliberately indifferent for failing to respond to inmate's complaints when prisoner is ostensibly under care of medical professionals); Spencer v. Bender, 2010 WL 972207 (D. Mass.) (Corrections personnel not deliberately indifferent for relying on medical professionals' assessment of inmate's back injury.).

The same principle applies where the inmate is seeking a reasonable accommodation for a claimed medical condition; "[p]rison officials may reasonably require the inmate to obtain medical confirmation of the alleged need for accommodation." Bane v. Virginia Dep't of Corr.,No. CIV.A. 705CV00024, 2005 WL 1388924, at *4 (W.D. Va. June 9, 2005) (quoting Shedlock v. Dep't of Correction, 442 Mass. 844, 858 (2004)).

Here, where a medical doctor has made a determination that electrolysis is not medically indicated the Defendants are entitled to rely upon the sound judgment of this medical professional.

### D.  DEFENDANTS ARE ENTITLED TO DISMISSAL AS TO PLAINTIFF'S FOURTEENTH AMENDMENT CLAIMS CONERNING EQUAL PROTECTION AND DUE PROCESS.

While Plaintiff alleges a violation of the Equal Protection Clause of the Fourteenth Amendment in Count III of her Complaint the Plaintiff fails to state a claim upon which relief can be granted.  To establish an equal protection violation, a plaintiff must show that (1) she was selectively treated, compared with others similarly situated; and (2) "that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Rubin Ovitz v. Rigato, 60 F.3d 906, 909–910 (1st Cir. 1995). "Under intermediate scrutiny, classifications by gender must serve important governmental objectives and must be substantially related to achievement of those objectives in order to be upheld." Doe v. Massachusetts Department of Correction, No. 17-12255-RGS, 2018 WL 2994403 (D. Mass. June 14, 2018), quoting Craig v. Bowen, 429 U.S. 190, 197 (1976).

16

In the instant case, Plaintiff alleges that her equal protection rights were violated because the Defendants discriminated against her on the basis of her "sex, gender identity, transgender status, and disability."[13]  However, as argued in Section II above, this is clearly not the case.  While the Plaintiff was not initially housed in a woman's unit at the SCHOC, the SCSD still ensured that the Plaintiff was able to interact with the other women at the prison to the degree that she stated that she was with the women more than the men. (***Amended Complaint p. 21***)  Here, unlike in <u>Doe</u> it is apparent that the SCSD made a particularized classification determination to allow the Plaintiff to participate in women's programing, to go to the library with the women and to go to the gym/yard with the women, while housed in a male unit.

The SCSD's classification decisions concerning the Plaintiff are permissible under the Criminal Justice Reform Act.  The Criminal Justice Reform Act[14] provides that prisoners with a gender identity that differs from the prisoner's sex assigned at birth shall be housed in a correctional facility with inmates with the same gender identity **unless** the placement would not ensure the prisoner's health or safety, **or that the placement would present management or security problems**.  M.G.L. c. 127, § 32A.  Here, it is clear from the Plaintiff's complaint that she was not free of discipline unlike the Plaintiff in <u>Doe</u>, and that the SCSD was trying to manage those issues as it continuously evaluated her classification.  When the Plaintiff initially requested to be housed in the women's unit in June of 2019, she was informed that "you will not move to the female unit **at this time**" (***Amended Complaint p. 23***)**,** and the Superintendent later told the Plaintiff to not pass notes between the women and the men when she restored Plaintiff's privilege of attending women's programming, (after Plaintiff had received a disciplinary report). (***Amended Complaint***

---

[13] Again, the Plaintiff fails to specify in any detail which Defendants she is referring to in Counts III and IV of her Complaint leaving the Defendants to speculate. However, it is apparent from the Plaintiff's complaint that Defendants Tompkins and Sullivan had no conversations with the Plaintiff relative to classification decisions and the only claim against Defendant Ruccio is that she removed the Plaintiff from women's programming for a week because she received a disciplinary report.  These allegations are not sufficient to state a claim against these Defendants.

[14] The Criminal Justice Reform Act (St.2018, c. 69) was signed into law by Governor Baker on April 13, 2018, and went into effect on December 31, 2018.

**p. 21**)  The SCSD's decision to manage the Plaintiff's classification in the manner that it did served an important governmental objective because the SCSD has an obligation to manage its facility to ensure the safe or orderly operation for all inmates in its custody.  The Plaintiff fails to state a claim under the equal protection act against any of the Defendants because the decision to not initially house her in the women's unit was based upon particularized considerations.

Finally, the Plaintiff also fails to state a due process claim under the Fourteenth Amendment because her classification did not create an "atypical and significant hardship on the inmate in relation to the normal incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995).[15]  The Plaintiff has not set out allegations demonstrating an "atypical and significant hardship" compared to what other inmates experience, or perceive as risks, at the SCHOC.  Rather the SCSD allowed the Plaintiff to assimilate with other women in other units, and she had single cell housing with separate showering. While the Plaintiff states that she fears for her physical safety to suggest either that other inmates (both male and female) do not experience those same fears in prison is incorrect.  Here, the Plaintiff's complaint allegations demonstrate that the SCSD made every effort to ensure that Plaintiff's safety and privacy were protected by assigning her to a single cell with separate showering, and by allowing her to integrate with the women as often as possible.

The Defendants respectfully request that this Court dismiss all of the Plaintiff's federal constitutional claims for both monetary and prospective injunctive relief in Counts III, IV and VIII for failure to state a claim upon which relief can be granted.

---

[15] To establish a due process claim "prisoner is required to show that (1) the state through the duration and conditions of his confinement, imposed 'atypical and significant hardship' on him' giving rise to a protected liberty interest; and (2) the state deprived him of the process he was due to protect that interest."  Doe v. Massachusetts Department of Correction, No. 17-12255-RGS, 2018 WL 2994403 (D. Mass. June 14, 2018), quoting Braithwaite v. Phelps, 2018 WL 2149771, at *2 (3d Cir. May 10, 2018).

IV.    **THE CLAIMS BROUGHT UNDER THE STATE CONSTITUTION MUST BE DISMISSED.**

The Complaint alleges violations of the Plaintiff's rights under Articles 1, 7, 106, and 114 of the Massachusetts Constitution (Counts V, VI and VII).   However, it is well established that the Eleventh Amendment prohibits state law claims from forming the basis for injunctive relief in a case filed in federal court. See Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 106 (1984) (finding that the Ex Parte Young exception is inapplicable to suits against state officials on the basis of state law); Associacion De Subscripcion Conjunta Del Securo De Responsabilidad Obligatorio v. Flores Galarza, 484 F.3d 1, 24, n.26 (1st Cir. 2007) ("Ex Parte Young, 209 U.S. 123 (1908) does not allow injunctive relief against state officials for violation of state law … because '[a] federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law.'") (quoting Diaz-Fonseca v. Puerto Rico, 451 F.3d 13, 43 (1st Cir. 2006)); Municipality of San Sebastian v. Puerto Rico, 116 F. Supp.3d 49, 57 (D. P.R. 2015) (Eleventh Amendment does not permit injunctive relief against state officials for violations of state law.). "[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law." Diaz-Fonseca, 451 F.3d at 43 (quoting Pennhurst State School & Hospital, 465 U.S. at 106).[16] Accordingly, the Defendants respectfully request that this Court dismiss the Plaintiff's claims under Articles 1, 7, 106, and 114 of the Massachusetts Constitution (**Counts V-VII**).

V.    **THE PLAINTIFF'S CLAIMS FOR VIOLATIONS OF PREA MUST BE DISMISSED.**

In Count IX of the Plaintiff's complaint she asserts violations of the Prison Rape Elimination Act of 2000, 42 U.S.C. § 15601 et seq.  The Defendants respectfully request that this Court dismiss the Plaintiff's allegations in Count IX because this statute does not allow a private right of action. "To the extent plaintiff

---

[16] Further, the Plaintiff may not bring direct claims under the state constitution but instead must bring the claims under the Massachusetts Civil Rights Act, Mass. Gen. L. c. 12 § § 11H, and 11I,  which she has failed to do.  Even if the Plaintiff had alleged state constitutional claims under the MCRA, her claims would still fail because there are no allegations that the Defendants interfered with her rights by way of threats intimidation or coercion.

asserts a claim under the Prison Rape Elimination Act of 2003 ("PREA"), 42 U.S.C. § 15601 et seq., ... the PREA does not grant prisoners any specific rights. "[E]very court to address the issue" has held that the PREA does not allow a private cause action. Chao v. Ballista, 772 F.Supp.2d 337, 341 n. 2 (D.Mass.2011) (internal citations omitted); see also Nestor v. Dir. of Northeast Region Bureau of Prisons, No. 11–4683, 2012 WL 6691791, at *3 (D.N.J.Dec.20, 2012) (granting summary judgment to defendants on the plaintiff's attempt to recover under the Prison Rape Elimination Act because it does not create a private cause of action). The PREA constitutes a record of congressional finding and does not create a private right of action. Rasheed v. D'Antonio, No. 10–11253–GAO, 2011 WL 4382097, at *19 (D. Mass. Aug 1, 2011)." Morissette v. Supt. of MCI Cedar Junction, No. 14–10246–DJC, 2014 WL 3896722, at *3, 2014 U.S. Dist. LEXIS 109024, at *8 (D.Mass. Aug. 7, 2014)

Accordingly the Defendants respectfully request that this Court dismiss the Plaintiff's PREA claims against them in Count IX of the Complaint.

**WHEREFORE**, the Defendants request that this Court allow their Motion to Dismiss for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6).

Respectfully submitted,
By Attorney,
MAURA HEALEY
ATTORNEY GENERAL
Allen H. Forbes
Special Assistant Attorney General


/s/ Melissa J. Garand
Melissa J. Garand
Assistant General Counsel
BBO No. 554727
Suffolk County Sheriff's Department
200 Nashua Street
Boston, MA  02114
(617) 704-6680
mgarand@scsdma.org

Date:  June 30, 2020

## CERTIFICATE OF SERVICE

I certify that this document is being filed through the Court's electronic filing system and sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on this date.  I also certify that on June 30, 2020, I mailed a paper copy via first class mail to the Plaintiff, Jennaya Bennett-Werra at the Suffolk County House of Correction, 20 Bradston Street, Boston, MA 02118.

/s/ Melissa J. Garand
Melissa J. Garand