UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JENNAYA BENNETT-WERRA, )
                              )
    *PLAINTIFF,*         )    Civil Action No. 1:20-cv-10017-ADB
                              )
    V.                      )
                              )
STEVEN TOMPKINS, et al.,  )
    *Defendants.*       )
-----------------------------------------

## MOTION OF OPPOSITION TO DEFENDANT NAPHCARE INC.'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

       I plaintiff Jennaya Bennett-Werra, acting as pro se, do so respectfully ask that the court enter judgment of my behalf as to not dismiss the amended complaint against defendants. I rely upon the accompanying memorandum of law in support of my motion.

DATED: 8-24-20

                Respectfully submitted by,
                Acting as pro se
                Jennaya Bennett-Werra
                ID#1902435
                Suffolk County H.O.C
                20 Bradston st
                Boston MA, 02118

                */s/ Jennaya Werra*

### CERTIFICATE OF SERVICE
-------------------------------------------------

       I Jennaya Bennett-Werra, certify that on the 28th of August 2020, a copy of the above was filed by paper copy and paper copies are being sent to all parties involved.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JENNAYA BENNETT-WERRA, )
                                   )
       *PLAINTIFF,*          )               Civil Action No. 1:20-cv-10017-ADB
                                   )
     V.                     )
                                   )
                                   )
STEVEN TOMPKINS, et al.,   )
      *Defendants.*         )
-----------------------------------------

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF MY MOTION OF OPPOSITION TO DEFENDANT NAPHCARE INC.'S MOTION TO DISMISS

1.      I, plaintiff Jennaya Bennett-Werra, acting as pro se, respectfully ask that the court uphold my amended complaint against defendant Naphcare Inc.

## INTRODUCTION

2.      I, Jennaya Bennett-Werra, am a pro se litigant currently incarcerated at Suffolk County H.O.C.. I am a transgender woman as stated in my complaint. This suit was brought against defendant Naphcare Inc. and their co-defendants Steven Tompkins et. al., who have separate counsel. This specific Memorandum of law is in support of my Motion of Opposition of the defendant Naphcare Inc.'s Motion to Dismiss.

3.      Defendant Naphcare Inc. is a contracted medical provided to provide access to medical services to the inmates of Suffolk County H.O.C.. This contract is between Naphcare Inc. and Suffolk County Sheriff's Department. Naphcare Inc. provides services pursuant to their contract with the sheriff.

4.      The arguments that I will make to defendants motion to dismiss are the following: 1) defendants are subject to my Americans with Disabilities Act claims under Title II and should be construed as an instrumentality of a local government. 2) Under Section 1983 and my Fourteenth Amendment claim for deliberate indifference to a serious medical need. 3) Under Section 1983 and my Fourteenth Amendment claims for denial of Due Process because I was deprived of a cognizable liberty interest.

# ARGUMENT

## I. THE COURT SHOULD DENY DEFENDANT NAPHCARES' MOTION TO DISMISS.

### A. Standard of Review.

5.      In considering a motion to dismiss, a court must take the "factual allegations in the complaint as true and make all reasonable inferences in plaintiff's favor." *Mississippi Pub. Employees' Ret. Sys. V. Boston Sci.,* 523 F. 3d 75, 85 (1st Cir.2008); *see* also Bell Atlantic v. Twombly, 550 U.S. 544, 555-56 (2007). A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements or federal rule 8(a). Rule 8 (a)(2) merely requires a complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief, " in order to give defendant fair notice of what the… claim is and the grounds upon which it rests." *Twombly,* 550 U.S. at 555. " stating such a claim requires a complaint with enough factual matter (taken as true) to suggest the required element." Id. at 556. A complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits. *See* id. at 554-55, 563 n.8; *Zond v. Fujitsu Semiconductor, 990* F. supp.2d 50, 53 (d.mass.2014) ("at the motion to dismiss stage a complaint generally will only be dismissed where it is 'entirely implausible' or impossible for the grouped defendants to act as alleged").

### B. Plaintiff States a Claim of Disability Discrimination Under Title II of the ADA and § 504 of the FRA in Counts I and II of the Complaint.

Title II of the ADA provides that:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by any reason of such disability, be excluded from participation in, or be denied the benefits of the <u>services,</u> programs, or activities of a public entity, or be subjected to discrimination by any such entity. 42 U.S.C. § 12132.

The substantive provisions of Title II and §504 of the FRA of 1973, 29 U.S.C.§ 794, are similar. Section 504 provides:

> No otherwise qualified individual with a disability in the United States… shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance…

28 U.S.C.§ 794(a). The standards of liability under the FRA are identical to those under the ADA, and thus the claims are usually analyzed together. *See, e.g., Nat'l Ass'n of the*

1

*Deaf v. Harvard Univ.*, 2016 WL 3561622, at *4 (D. Mass. Feb. 9, 2016), *report and recommendation adopted*, 2016 WL 6540446 (D. Mass. Nov. 3, 2016).

6.  To state a claim under the ADA, a plaintiff must establish "(1) that (s)he is a qualified individual with a disability; (2) that (s)he was either excluded from participation in or denied the benefits of some public entity's, services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability." *Cox v. Massachusetts Dep't of Corr.*, 18 F. Supp. 3d 38, 48-49 (D. Mass. 2014) (quoting *Parker v. Universidad de Puerto Rico*, 225 F. 3d 1, 5 (1st Cir.2000).

### 1. Plaintiff is a Qualified Individual with a Disability Under the ADA and FRA.

7.  The ADA defines disability as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individuals; (B) a record of such an impairment; or (C) being regarded as having such impairment (as described in paragraph (3))."42 U.S.C. § 12102(1). My Gender Dysphoria is squarely within all three prongs of the ADA's definition of disability.

8.  Defendant Naphcare Inc. does not contest to this in there Memorandum of law in support of their motion to dismiss *see* Doc. No. 31.

### 2. I Have Sufficiently Pled That I Have Been Subjected to Discrimination Under Title II of the ADA and § 504 of the FRA.

9.  Title II and § 504 contain broad, all-encompassing prohibitions of discrimination by public entities. *See* 42 U.S.C. § 12132; 29 U.S.C. § 794(a). Contrary to Defendants' assertion, I need not identify a specific program, activity or service from which I was excluded to state a claim. "The language of Title II's anti-discrimination provision does not limit the ADA's coverage to conduct that occurs in 'programs, services, or activities' … It is a catch-all phrase that prohibits discrimination by a public entity, regardless of context." *See Innovative Health Systems v. City of White Plains*, 117 F.3d 37, 44-45 (2d Cir. 1997), *superseded on other grounds by Zervos v. Verizon N.Y.*, 252 F.3d 163, 171 n.7 (2d Cir. 2001). *See also Noel v. N.Y. City Taxi & Limousine Comm'n*, 687 F.3d 63,68 (2d Cir. 2012) ("The phrase 'services, programs, or activities' has been interpreted to be 'a catch-all phrase that prohibits all discrimination by a public entity.'"); *Hason v. MED. Bd. Of California*, 279 F.3d 1167, 1172-73 (9th Cir.2002) ("The ADA's broad language brings within its scope anything a public entity does.") *Yeskey v. Com. of Pa. Dep't of Corr.*, 118 F.3d 168, 170-71 (3rd Cir. 1997), *aff'd sub nom, Pa. Dep't of Corr. V. Yeskey*, 524 U.S.C. 206,210 (1998) (stating that "the statutory definition of 'program or activity' in Section 504 indicates that the terms were intended to be all-encompassing," and broadly interpreting Section 504 and Title II of the ADA to apply to anything a public entity does"). Defendant's failure to make medical recommendations to their co-defendants in the classification

process has allowed and encouraged their co-defendants to discriminate against me in the classification process, as I am a woman with Gender Dysphoria and all other women who do not have a diagnosis of Gender Dysphoria are not housed in male units at Suffolk County H.O.C. The courts should hold Naphcare Inc. liable for my classification to a male unit along with their co-defendants.

### 3. DEFENDANT NAPHCARE IS SUBJECT TO SUIT UNDER TITLE II OF THE ADA.

10.     Defendant Naphcare Inc. should be construed as an instrumentality of a local government and therefore a public entity, do to their existing contract with their co-defendants, essentially Suffolk County Sheriff's Department. The contract is mainly for the purpose of administering medical services to the inmates in the custody of the Suffolk County Sheriff's Department. Essentially Naphcare provides a public service for a local government (Suffolk County Sheriff's Department) and therefore should be considered an instrumentality. This is an issue to be argued later on not at a motion to dismiss stage of litigation. *See* defendant Naphcare Inc.'s Memorandum of Law in Support of their Motion to Dismiss, Doc. No. 31 page 5 " Although the First circuit has not addressed whether a private contractor might be an 'instrumentality' of the state and therefore, a ' public entity' , the vast majority of courts, including all circuit courts that have addressed the issue, have held that a private contractor is not a 'public entity' under the ADA."

11.     This issue should be argued at a later stage of the litigation process because this is not grounds for dismissal due to the fact that this Court has not yet addressed this specific issue. A complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits. *See* Id. at 554-55,563 n.8; Zond v. Fujitsu semiconductor, 990 F. Supp. 2d 50, 53 (D.Mass,2014) ("At the motion to dismiss stage a complaint generally will only be dismissed where it is 'entirely implausible' or impossible for the grouped defendants to act as alleged"). The issue of Naphcare Inc. being an instrumentality is not entirely implausible, and should be argued at a later stage of litigation in order to allow me to gain access to additional information regarding Naphcare Inc.'s business contract with its co-defendants Suffolk County Sheriff's Dep't.

12.     Defendants Naphcare Inc. alleges my sole claim against them is the denial of access to electrolysis, *see* defendants Memorandum of law in Support of their Motion to Dismiss Doc. No. 31 page 3. This is their misunderstanding of my allegation against them. My claims of refusal to house me on a female unit also applies to Naphcare Inc. because they are responsible for providing medical care to all inmates housed at Suffolk County Sheriff's Dep't. Therefore defendant Naphcare should be held liable because they

never made any medical recommendation regarding my housing accommodations to their co-defendants. This also would suffice under my Fourteenth Amendment claims.

### 4. Defendant Naphcare Inc. violated my rights under Section 1983 and my Fourteenth Amendment claim of Due Process for deliberate indifference to a serious medical need.

Pre-trial inmates can bring claims for inadequate medical care under the Fourteenth Amendment Due Process Clause because health care is a liberty interest.

13.     Defendant Naphcare Inc. has failed to provide me with adequate medical care for the treatment of my Gender Dysphoria. I have sufficiently pled in my amended complaint that defendants have denied me electrolysis stating that such treatment is "not medically indicated". Electrolysis is necessary in treatment of Transgender Females with Gender Dysphoria. Treatment of individuals with Gender Dysphoria is to live consistently with one's Gender Identity, as recommended by the American Psychological Association (APA) and the World Professional Association for Transgender Health (WPATH). Living with male body hair and facial hair is not living consistent with my gender Identity as I am a woman and women do not have male body hair or male facial hair.

14.     Defendants do not have an endocrinologist at the facility and have yet to allow me to see one. Defendants did in fact make a deliberate indifference to a serious medical need by telling me that my request for electrolysis is "not medically indicated" without allowing me to see an endocrinologist to make that determination. This determination was made by a Naphcare employee who is not certified as an endocrinologist therefore my requests where never seriously evaluated, *See* Hudak v. Miller, 28 F. Supp. 2d 827,831 (S.D.N.Y.1998) ("It should be noted that the knowledge which Hudak must show is not that Hudak had a brain aneurysm… but rather that Miller knew that Hudak had some serious medical problem which bore further investigation"; plaintiff had complain for nine months of chronic headaches before receiving a CT scan). *See* Mata v. Saiz, 427 F.3d 745, 756 (10th Cir.2005) (nurse who did not assess a prisoner suffering severe chest pains could be found deliberately indifferent); McElligott v. Foley, 182 F.3d 1248, 1256 (11th Cir. 1999) (doctor who failed to diagnose plaintiff's cancer could still be found to have actual knowledge of a substantial risk based on his "tremendous pain and illness" which the doctor observed); Hollenbaugh v. Maurer, 397 F. Supp.2d 894,904 (N.D.Ohio 2005) ("The plaintiff does not have to show that the defendants knew of the exact medical risk threatening Hollenbaugh"; the fact that he did not self- diagnose his heart attack or report his heart condition did not absolve defendants who observed ample evidenced of his symptoms and complaints);Spencer v. Sheahan, 158 F. Supp. 2d 837, 846-50 (N.D.Ill. 2001) (doctor who knew that diabetics are at risk for foot problems and require prompt wound care to prevent long-term complications, but who waited two days

before examining a patient with complaints of pain and discolored skin on foot and seven more days before referring patient to appropriate specialist, could be found deliberately indifferent where patient ultimately had partial foot amputation because of gangrene and infection). In this case defendants knew that I have a medical diagnosis of Gender Dysphoria and have been proscribed with the need to undergo a medical transition. Therefore my request for electrolysis should have been further investigated; instead I received a medical determination of "not medically indicated" from Naphcare employees who are not qualified medically to make such decisions. This alone should support my claims for deliberate indifference.

15. If defendants violate published professional standards for care – though these don't not by themselves show a constitutional violation- they may also be found to have had actual knowledge. The standards or procedures may "provide circumstantial evidence that a prison health care gatekeeper knew of a substantial risk of serious harm" in the situations in which they give instructions. In my amended complaint I have referenced professional standards of care such as, The World Professional Association for Transgender Health (WPATH), The American Psychological Association (APA) and the Fifth Edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM-V). *see* Amended Complaint ¶'s 20,23,28. Electrolysis is part of the standards of care in treating people with Gender Dysphoria because without it one cannot achieve the end goal of gender reassignment surgery. *See* Mata v. Saiz, 427 F.3d 745,757 (10th Cir. 2005). Even if there is no violation of policy, the policies may be evidence of the defendants' knowledge of the risks inherent in certain circumstances.

16. The acts and statements made by defendants should demonstrate an indifferent attitude toward my medical need, because my request for electrolysis was denied due to a response of "not medically indicated" this should show that defendants acted indifferent. My request where never taken seriously or further investigated to see if my request where actually "medically indicated". *See* Meriwether v. Faulkner, 821 F.2d 408,413 (7th Cir.1987) (doctor ridiculed transgender prisoner and completely denied care). I have been proscribed the treatment to undergo a medial transition and defendants have delayed this process because electrolysis is part of this proscribed treatment.

17. Defendants Naphcare Inc. has made a deliberate indifference to a serious medical need by making a judgment of "not medically Indicated" to my request for electrolysis, because this judgment was made by an untrained medical staff, and a not qualified specialist. *See Williams v. Edwards, 547, F.2d 1206, 1216-18(5th Cir.1977) (constitution was violated by medical staff consisting of mostly unlicensed doctors, untrained inmates and an untrained pharmacist.).* Defendants have made me suffer severe anxiety and depression because of lack of treatment for my Gender Dysphoria and delay of my proscribed treatment to undergo a medical transition to the female gender.

### 5. TREATMENT FOR GENDER DYSPHORIA DOES CONSITUTE A SERIOUS MEDICAL NEED.

5

18.     There have been many cases in which treatment for individuals with Gender Dysphoria has met the constitutional requirements of a serious medical need. The courts are agreed that gender identity disorders or Gender Dysphoria is a serious medical need, *see* Cuoco v. Moritsugu, 222 F.3d 99, 106 (2nd Cir. 2000) and cases cited: White v. Farrier,849 F.2d 322,325 (8th Cir. 1988);Meriwether v. Faulkner, 821 F.2d 408,411-13 (7th Cir. 1987). The denial of any treatment at all for it constitutes deliberate indifference. *See* Meriwether v. Faulkner, 821 F.2d at 414. Many courts have held that a serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity of a doctor's attention. *See* McGuchin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir.1992) ("the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment" supports a finding of seriousness). My request for electrolysis is within both of these two prongs to meet a serious medical need. 1) for the first prong, although I have not been specifically diagnosed with the need for Electrolysis I have been diagnosed with the need to undergo a medical transition to the female gender, As discussed in part in my amended complaint a medical transition typically consist of cross-gender hormones, counseling and gender reassignment surgery. Electrolysis is part of the medical transition also because one cannot have a gender reassignment surgery without first completely removing the body hair in that specific area. Technically speaking since I was diagnosed with the need to undergo a medical transition to the female gender and have started the first stages of my medical transition (specifically hormone replacement therapy), I have also been diagnosed with the need for electrolysis because it is part of the medical transition process.2) for the second prong, because I have male body hair and male facial hair when I am a female this fits under the second prong of being so obvious that even a lay person would have easily recognized the necessity of a doctors attention.

19.     A recent Second Circuit decision sums up all factors, stating that the seriousness of a medical need is determined by factors including but not limited to "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment' (2) whether the medical condition significantly affects daily activities, and (3) "the existence of chronic and substantial pain." the treatment I was denied specifically electrolysis does meet these standards for serious need.(1) reasonable doctors due perceive electrolysis as medical need in part to treat many individuals with Gender Dysphoria who have been diagnosed with the need to undergo a medical transition to the desired gender.(2) my medical condition of Gender Dysphoria does affect my daily activities due to the fact that I suffer from severe depression and anxiety. (3) There is the factor of existing chronic and substantial pain of mental anguish and severe depression and anxiety revolving around my diagnoses of Gender Dysphoria when it is not treated.

### 6. I have pled sufficient facts to show that Naphcare is liable under Section 1983 because of the contract they hold with Suffolk County Sheriff's Department.

20.     Defendants Naphcare Inc. has a contract with Suffolk County Sheriff's Department to provide health care services to all inmates held at Suffolk County Sheriff's Department. In this contract Naphcare Inc. only provides medical services pursuant to the Sheriff's direction. In my amended complaint I made claims that Naphcare is contracted by Suffolk County Sherriff's Department for the provisions of medical services to all the inmates held at Suffolk County H.O.C. *see* amended complaint ¶ 11. Naphcare Inc. can be held liable for its employee's action because their employee's only provide certain medical provisions pursuant to Naphcare Inc's contract with the sheriff. This contract should suffice as an official policy and agreement between Naphcare Inc. and Suffolk County Sheriff's Department. Due to this contract Naphcare Inc. should be held liable for its employee's actions because their employees are only acting in accordance with the established contract with Suffolk County Sheriff's Department.

### 7. I have pled sufficient facts to show that Naphcare has violated The Equal Protection Clause of the Fourteenth Amendment.

21.     I have pled that I have been discriminated against when it comes to my housing accommodations as I am a women and no other women are housed on a men's unit. Defendant Naphcare misinterpreted my amended complaint by suggesting that I am treated differently from other individuals with Gender Dysphoria. My claims clearly state that I am treated unequally to other females held at Suffolk County Sheriff's Department. My claims against Naphcare are not exclusively the denial of electrolysis, I have made claims against Naphcare for failure to house me in a female unit which also brings my claim of being treated differently to other female inmates housed at Suffolk County H.O.C. Although Defendant Naphcare may say that they have nothing to do with the housing accommodations made at Suffolk County H.O.C. this is not true. By failing to make the medical recommendation of housing me on a female unit for the treatment of my Gender Dysphoria and for my safety should be looked at as their part on refusing to house me on a female unit along with their co-defendants Suffolk County H.O.C.

### 8. I stated a claim for a Violation of Due Process Under the Fourteenth Amendment in count IV of the Complaint.

22.     My allegations also properly state a claim for violations of procedural and substantive due process. First, my liberty interest in not being housed on a men's unit, with constant affront to my very existence and the unique unending risk of harm that such confinement entails, gives rise to a procedural due process claim. State regulations create a liberty interest if they impose a form of restraint that represents an "atypical and significant hardship on the inmate in relation to the normal incidents of prison life." *Sandin V. Conner,* 515 U.S. 472,484 (1995). Such is

undeniable the case here. The ongoing harms heightened potential for victimization that comes with being a women housed on a men's unit gives rise to a liberty interest, particularly where such placement in indefinite, where my placement in the men's unit is not necessary for safety. *See Wilkinson v. Austin,* 545 U.S. 209, 224 (2005) (indefinite placement in supermax facility, even if facility's conditions are necessary, gives rise to liberty interest in avoiding such placement).

23.     Even if state regulations did not already create a liberty interest, I would still have one because the restraint in question – requiring me to be housed in a men's unit, where it is foreseeable that I would be openly discriminated against, harassed and threatened – clearly creates an "atypical and significant hardship" on me that so exceeds the "normal incidents of prison life" that it gives rise to due process protection by its own force. *Sandin,* 515 U.S. at 484. My confinement in a male facility implicates due process because of the atypical hardship it imposes on me and the departure it represents from experiences of other prisoners. *See id.* (citing cases finding due process protection in transfer to mental hospital or involuntary administration of psychotropic medication to prisoner). The DOC's own policy acknowledges how unusual my circumstances are. *See* Massachusetts Department of Correction: Identification, Treatment and Correctional management of Inmates Diagnosed with Gender Dysphoria, 103 DOC 652, Att.B ("Risk of Victimization" factors on internal housing form include "Is or perceived to be Transgender, intersex, Gender Dysphoria…"). These policies are under medical care policies of the Massachusetts Department of Corrections. This is a factor to look closely at when deciding whether Naphcare Inc. should be held liable for refusing to house me on a female unit and refusal to treat me the same as all other females.

24.     Where there is a liberty interest, the question in a procedural due process claim is whether the process afforded to the plaintiff is sufficient. The Complaint firmly alleges that in my case, it is not. I am faced with an administration that has categorically rejected my request to be housed on a female unit for over a year.

25.     Second, as alleged in the Complaint, the persistent sexual harassment and constant affront to my long-standing identity as a women that my experiences, as a direct result of my placement in a men's unit, subjecting me to a known increased risk of sexual harm and to intentionally place me in an environment that inherently denies me the identity-affirming treatment required by my Gender Dysphoria is the type of government action that is clearly improper "regardless of the fairness of the procedures" afforded to me. *Gonzalez-Fuentes v. Molina,* 607 F.3d 864,880 (1st Cir.2010) (quoting Daniels v. Williams, 424 U.S. 327, 331 (1986)). Government action violates substantive due process if it is "so egregious, so outrages, that it may fairly be said to shock the consciences." Id. (quoting County of Sacramento V. Lewis, 523 U.S. 833, 847 n.8 (1998)). Analysis of whether certain conduct shocks the conscience is fact-specific and unique to the circumstances of the particular case. Id. at 881. Because my complaint includes sufficient allegation to prove facts that support my claim, this Court should deny Defendant's motion.

### 9. Argument Under the Prison Rape Elimination Act.

26. Although my claims under The Prison Rape Elimination Act of 2000, 42 U.S.C.§ 15601,et seq. may not create a private right of action it allows me to sufficiently assert the seriousness of my other claims. Also, it allows me to reference federal policies in which defendants are supposed to follow but have failed to do so, failure to follow these policies create a big part of my constitutional claims. I ask that the Courts allow my Prison Rape Elimination claims only for the purpose of supporting my other claims.

## CONCLUSION

27. For the foregoing reason, I request that the Court deny Defendant's Motion to Dismiss.

Dated: 8-24-20

Acting as pro se
Jennaya Bennett- Werra
ID#1902435
Suffolk County H.O.C.
20 Bradston st
Boston MA 02118

## CERIFICATE OF SERVICE

I, Jennaya Bennett-Werra, hereby certify that this document filed with the Court via mail will be sent via mail to all participants on August 28th, 2020.

Jennaya Bennett-Werra

*Jennaya Werra*

9